IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NIKE, INC.**,<br><br>    Plaintiff,<br><br>  v.<br><br>**ENTER PLAY SPORTS, INC.**,<br><br>    Defendant. | Case No. 3:14-cv-1104-SI<br><br>**OPINION AND ORDER** |

Jon P. Stride, TONKON TORP LLP, 1600 Pioneer Tower, 888 SW Fifth Avenue Portland, OR 97204; Christopher J. Renk, Michael J. Harris, and Aaron Bowling, BANNER & WITCOFF, LTD., 10 South Wacker Drive, Suite 3000, Chicago, IL 60606. Of Attorneys for Plaintiff.

Stephen J. Joncus, JONCUS LAW LLC, P.O. Box 838, Clackamas, OR 97015. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

    Plaintiff, NIKE, Inc. ("NIKE"), asserts that it reached a final, binding, and enforceable settlement agreement in this case with Defendant, Enter Play Sports, Inc. ("Enter Play"), during a judicial settlement conference conducted by U.S. Magistrate Judge John V. Acosta. Enter Play disagrees and refuses to sign the settlement agreement and related declaration that NIKE contends Enter Play agreed to sign. NIKE has moved to enforce the parties' settlement

PAGE 1 – OPINION AND ORDER

agreement and for sanctions. Dkt. 64. For the reasons stated below, NIKE's motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

NIKE designs, markets, and distributes athletic footwear, apparel, equipment, and accessories for a wide variety of sports and fitness activities. Enter Play is owned by Brad and Terri Jamison. Mr. Jamison initially acquired a lace braiding machine for manufacturing athletic equipment. He later became an inventor, practicing the art of lace braiding.

In its Complaint, NIKE asserts two claims against Enter Play. NIKE's first claim alleges breach of contract, claiming that Enter Play breached a Non-Disclosure Agreement ("NDA") between NIKE and Enter Play. NIKE's second claim alleges a violation of the Oregon Trade Secrets Act, Or. Rev. Stat. § 646.461, *et seq*. Enter Play denies NIKE's claims and asserts two counterclaims. Enter Play's first counterclaim seeks a declaration that its pending patent applications either do not contain any confidential information subject to the parties' NDA or that any such confidential information is not subject to the NDA based on the NDA's express exclusions. Enter Play's second counterclaim seeks attorney's fees and costs under the NDA.

NIKE and Enter Play litigated this case for approximately one year before voluntarily participating in a judicial settlement conference with Judge Acosta on July 16, 2015. Both NIKE and Enter Play were represented by their litigation counsel at the judicial settlement conference. A decision-maker from NIKE attended the conference, and Mr. and Mrs. Jamison attended on behalf of Enter Play. At the conclusion of that settlement conference, the parties stated that they had reached a settlement agreement.

In the presence of the parties and their counsel, Judge Acosta placed the essential settlement terms on the record. *See* Dkt. 58-2. Judge Acosta noted that Mr. Jamison agreed to sign a declaration in the form previously submitted by NIKE with the addition of a sentence in

PAGE 2 – OPINION AND ORDER

which Mr. Jamison declares that if there is any overlap between NIKE and Enter Play's footwear-related inventions, Mr. Jamison obtained the information related to that overlap from NIKE. Judge Acosta also noted the confidential monetary terms of the settlement. Judge Acosta also stated that Enter Play would retain its patent applications and any patents that may issue and NIKE would retain its patent applications and any patents that may issue. Judge Acosta further stated that the NDA would be terminated and that the parties would sign mutual releases for all claims arising out of the NDA. Judge Acosta also noted that the parties agree to prepare mutually acceptable public statements regarding what they may say about their relationship, the lawsuit, and the settlement. In addition, and most relevant to the pending dispute, Judge Acosta recited the "covenants not to sue" that the parties purported to agree upon. As Judge Acosta explained:

> Nike will not . . . sue Enter Play Sports regarding its patent. And Enter Play Sports will not use its patent to sue or as the basis of suit against Nike.

Dkt. 58-2 at 5.

After explaining his understanding of the settlement terms, Judge Acosta asked counsel for each party to state any corrections, amendments, or clarifications on the record. NIKE's counsel sought clarification regarding the declaration that Mr. Jamison would sign, ultimately confirming the additional sentence recited by Judge Acosta. After this issue was clarified, NIKE's counsel began to reiterate the parties' understanding with respect to the mutual covenants not to sue, but the audio recording equipment failed at this point, and there is no record of counsel's discussion regarding the covenants not to sue or any other issues.

After the conclusion of the settlement conference with Judge Acosta, the parties attempted to document their purported settlement agreement. NIKE drafted a written agreement consistent with its understanding of the settlement terms. Enter Play, however, refused to sign

PAGE 3 – OPINION AND ORDER

the proposed written agreement, stating that NIKE's draft settlement agreement did not correctly recite the agreed-upon mutual covenants not to sue.

The parties could not resolve this issue among themselves, so they approached Judge Acosta for further assistance. On August 26, 2015, Judge Acosta held a telephone conference on the record with counsel for both parties. Dkt. 58-4 at 37-60 (transcript). Judge Acosta confirmed that both sides continued to believe that they had reached a settlement agreement on July 16, 2015, and only disputed the precise wording of the agreed-upon mutual covenants not to sue. Both sides agreed with that characterization. Enter-Play's then-counsel[1] stated: "I would agree, Your Honor. It is the scope of the covenant and not whether—whether there was an underlying settlement." Dkt. 58-4 at 46-47. Judge Acosta then offered the parties four options. Without placing any pressure on the parties to select any particular option, Judge Acosta suggested that: (1) the parties could walk away from the purported settlement and the case would be reinstated; (2) the parties could submit to Judge Acosta for resolution by him their dispute over the scope of the covenants not to sue; (3) one or both of the parties could file a motion or a separate action to enforce the purported settlement agreement; or (4) the parties could continue to negotiate the terms of the covenant not to sue. *Id.* at 47-48. Judge Acosta added that if the parties elected to continue to negotiate, that would not preclude any party from pursuing any of the other options at a later time.

---

[1] When NIKE filed its original motion to enforce settlement and for sanctions, NIKE sought sanctions against both Enter Play and its original litigation counsel, Judson M. Carusone. Dkt. 58. That prompted Mr. Carusone to move to withdraw. Dkt. 60. Although NIKE then agreed to amend its motion and seek sanctions only against Enter Play, Dkt. 64, Enter Play substituted its current counsel, Stephen J. Joncus, for Mr. Carusone. Dkt. 66.

PAGE 4 – OPINION AND ORDER

The parties, through their counsel, agreed to submit their dispute to Judge Acosta for his final and binding resolution.[2] *See* Dkts. 58-6 and 58-7. In an email dated September 3, 2015, Judge Acosta acknowledged the parties' agreement to submit their disputes to him, and he informed the parties that:

> When I retain jurisdiction over a settlement agreement that function includes resolving disputes over the language of the final agreement. Thus, if there are additional issues about the language of the settlement agreement, then all such issues should be submitted during the briefing phase. Once I decide the final language of the settlement agreement the parties will be finally bound by my decision.

Dkt. 58-6 at 4.[3] Both NIKE and Enter Play, through their respective counsel, replied to this email, and neither party questioned or disputed Judge Acosta's representation about the binding nature of the parties' agreement to have Judge Acosta finally resolve any remaining disputed issues relating to the scope of the settlement agreement.

On September 28, 2015, counsel for NIKE reported to Judge Acosta that there were three remaining disputes relating to the settlement agreement and that: "The parties agree to have Your Honor decide the three remaining disputes." Dkt. 58-6 at 1. These three disputes related to the covenants not to sue, the termination of the NDA, and the confidentiality requirement regarding what the parties will be permitted to say about their relationship, the lawsuit, and the settlement. The Parties submitted to Judge Acosta simultaneous opening submissions relating to these three

---

[2] Enter Play does not deny that this agreement to submit the remaining dispute to Judge Acosta for his final and binding determination was made by Enter-Play's then-counsel with authority by Enter Play.

[3] This is consistent with Judge Acosta's publicly-available standing Order and Instructions and Information for Settlement Conferences, where Judge Acosta states at page 6: "If the parties wish, I will retain jurisdiction over the settlement for purposes of resolving any disagreements about the settlement terms." *See* https://www.ord.uscourts.gov/index.php/court-info/judges/judge-acosta (last visited May 28, 2016).

PAGE 5 – OPINION AND ORDER

disputes regarding the terms of the settlement agreement and later submitted simultaneous responses. *See* Dkts. 58-4, 58-5, 58-8, 58-9. Enter Play began its opening submission to Judge Acosta by stating:

> *The parties agreed* to have your Honor resolve the dispute as to the form of the *final* written settlement document.

Dkt. 58-5 at 1 (emphasis added).

On January 28, 2016, Judge Acosta issued a detailed letter opinion resolving all of the disputes that the parties had raised relating to the settlement agreement. Dkt. 58-3. Shortly thereafter, NIKE provided Enter Play, through counsel, with a revised written settlement agreement that incorporated Judge Acosta's rulings. Enter Play, however, refuses to sign this document. Dkt. 58-12. NIKE's motion to enforce followed.

## DISCUSSION

Enter Play's primary argument for why it need not sign the settlement agreement and related declaration of Mr. Jamison is that the parties did not achieve a "meeting of the minds" at the settlement conference held on July 16, 2015, because they had different understandings of the scope of the covenant not to sue. Thus, argues Enter Play, there was no binding settlement agreement ever reached. Enter Play argues that it believed that each party would "retain" its own patents resulting from the pending applications and that the covenants not to sue were "reciprocal," meaning to Enter Play that NIKE would not assert any ownership interest in any patents that may be issued to Enter Play and Enter Play would not assert any ownership interest in any patents that may be issued to NIKE. Mr. Jamison states that at no point did he (or his wife) ever understand that Enter Play was agreeing not to sue NIKE for any potential infringement of any patents that may be issued to Enter Play from the pending applications.

PAGE 6 – OPINION AND ORDER

NIKE responds that the terms of the covenant not to sue were clear, unambiguous, and placed on the record and that Enter Play is bound by its agreement to those terms.

The Court, however, need not reach the issue of whether the parties reached a "meeting of the minds" during the settlement conference held on July 16, 2015. What is clear and undisputed from the record in this case is that, after this disagreement arose and the purported "misunderstanding" came to light, both parties unambiguously and expressly agreed to have Judge Acosta fully and finally resolve all remaining disputes among the parties relating to this matter. Judge Acosta did so with full authority from the parties, and the parties are bound by Judge Acosta's final determination.

Enter Play does not dispute that it expressly agreed to have Judge Acosta fully and finally resolve all remaining disputes relating to the settlement agreement. Enter Play argues instead that Judge Acosta acted outside of his official authority in purporting to conduct a "binding mediation" and that a "mediator" cannot make a "binding determination" because mediation is different from arbitration.

Enter Play cites to the District of Oregon's Local Rule ("LR") 16-4(f) relating to court-sponsored mediations as supporting Enter Play's assertion that Judge Acosta could not hold a "binding mediation." Enter Play also cites to a California case, *Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618 (2006), in support of Enter Play's position that mediator cannot offer a binding resolution.

Under LR 16-4(e), "Court-Sponsored Mediation" (LR 16-4(e)(2)) is distinct from a "Request for a Settlement Judge" (LR 16-4(e)(3)). Further, LR 16-4(f) ("Court-Sponsored Mediation Procedures") applies only to court-sponsored mediation, and not to judicial settlement conferences. Judge Acosta was acting as a settlement judge pursuant to LR 16-4(e)(3). *See*

PAGE 7 – OPINION AND ORDER

Dkt. 45 (setting "Settlement Conference" with Judge Acosta) and Dkt. 48 (minutes of the "Settlement Conference"). Thus, Enter Play's argument based on Rule 16-4(f) is misplaced.

Enter Play also misunderstands the proceedings that were held with Judge Acosta. Judge Acosta did not hold a "binding mediation" on July 16, 2015. He held a judicial settlement conference under which no party was obligated to settle the case—or even obligated to attend. The parties requested a judicial settlement conference; they were not ordered to one. The parties did, however, state at the settlement conference that they believed that they had reached a binding agreement and even put the terms of the purported settlement on the record.

Several weeks later, however, the parties were unable to reach agreement on how to document certain terms as they were attempting to prepare a written settlement agreement. The parties then both requested additional assistance from Judge Acosta. As recited above, Judge Acosta, without pressuring any party to accept any particular option, suggested to the parties that they could choose from among several options, including, among others: (1) walking away from the purported settlement, reinstating the case, and continuing to litigate; (2) continuing to negotiate; or (3) submitting their remaining disputes to Judge Acosta to resolve. Both parties then expressly agreed to have Judge Acosta issue a final and binding resolution of their remaining disputes.

The parties' telephone conference with Judge Acosta on August 26, 2015, the parties' subsequent email communications with each other and with Judge Acosta, and the parties' written submissions to Judge Acosta all conclusively demonstrate that Enter Play and NIKE reached a "meeting of the minds" on all material terms necessary to establish an enforceable agreement to have Judge Acosta fully and finally resolve their remaining disputes. *See generally In re Marriage of Baldwin*, 215 Or. App. 203, 207 (2007) ("The exchange of e-mails between the

PAGE 8 – OPINION AND ORDER

attorneys for the parties demonstrated the requisite agreement on the same essential terms of the settlement.").

Thus, it does not matter whether the parties reached a "meeting of the minds" at the July 16, 2015 settlement conference. Even if they did not, approximately one month later they entered into a binding agreement to have Judge Acosta fully and finally resolve their remaining disputes so that they could move on with their respective businesses without the continuing expenses, burdens, and risks of continuing litigation. This is a binding and enforceable agreement.

Indeed, at oral argument, Enter Play conceded that if Judge Acosta were a private mediator privately engaged by the parties, rather than a federal judge at a judicial settlement conference, the parties' agreement to be bound by the final decision of the neutral would be perfectly enforceable. Enter Play's concession is correct. *See Nat'l Ass'n of Bus. Representatives v. TeamstersLocal Union No. 948*, 2007 WL 2904221, at *11 (E.D. Cal. Oct. 3, 2007) (finding that the parties were bound by their contractual agreement that the decision of the mediator would be final and binding and noting that "[t]here is no law of which the Court is aware that the parties cannot contractually agree in advance to be bound by the [mediator's] decision").

Enter Play, however, argues that this situation is different because Judge Acosta is a federal judicial officer and not a private mediator. In support, Enter Play cites to Canon 4(A)(4) of the CODE OF CONDUCT FOR UNITED STATES JUDGES, which states: "A judge should not act as an arbitrator or mediator or otherwise perform judicial functions *apart from the judge's official duties* unless expressly authorized by law." CODE OF CONDUCT FOR UNITED STATES JUDGES, Administrative Office of the U.S. Courts (available at http://www.uscourts.gov/judges-

PAGE 9 – OPINION AND ORDER

judgeships/code-conduct-united-states-judges#c) (last visited May 28, 2016) (emphasis added). Enter Play's argument is unavailing.

In this case, Judge Acosta did not act as an arbitrator or mediator "apart" from his official duties. The assignment of Judge Acosta to serve as the settlement judge in the settlement conference in this case was done as an official act in this matter and recorded in the official docket for the case. *See* Dkts. 45 and 48. Judge Acosta's official service in this role also is entirely consistent with the local rules of this district. *See* LR 16-4(e)(2) ("The assigned judge, on his/her own motion or at the request of a party, may schedule a settlement conference before a judicial officer of this Court.") Further, Judge Acosta's service was done pursuant to statutory authority. *See* 28 U.S.C. § 636(b)(3)("A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."). Thus, contrary to Enter Play's assertion, Canon 4 does not prohibit a federal magistrate judge from being assigned to serve as a settlement judge in a judicial settlement conference in a case pending in federal court.

Indeed, federal magistrate judges, and some district judges, both in this district and elsewhere, not infrequently conduct judicial settlement conferences as part of their official duties. *See generally* Hon. Morton Denlow, *Magistrate Judges' Important Role in Settling Cases*, May/June 2014 THE FEDERAL LAWYER 101 ("I spent 16 and a half years as a federal Magistrate Judge in Chicago before leaving the bench in October 2012. During that time, one of the principal duties of the Magistrate Judges in our court was to conduct settlement conferences. Each judge would conduct more than 100 settlement conferences a year and would settle the large majority of those cases.") (available at http://www.jamsadr.com/files/Uploads/Documents/ Articles/Denlow-Magistrate-Judges-FedLawyer-2014-May-Jun.pdf) (last visited May 28, 2016);

PAGE 10 – OPINION AND ORDER

*see also* Hon. John V. Acosta, *Tips from the Bench: Effective Judicial Settlement Conferences in Federal Court*, Winter 2009 QUARTERLY NEWSLETTER OF THE OREGON CHAPTER OF THE FEDERAL BAR ASSOCIATION 1 (available at https://www.lanecountybar.org/pdfdocs/CLE/ 9%2026%2013/Settlement%20-%20AC%20FBA%20Article.pdf) (last visited May 28, 2016).

Similarly, Enter Play's reliance on *Lindsay* also is unavailing. In *Lindsay*, the parties signed a stipulated settlement agreement after a private mediation. 139 Cal. App. 4th at 1620. Most but not all of the parties signed a version stating that they agreed to resolve any disputes regarding the terms of the agreement by binding arbitration, but some of the parties signed a version requiring a return to the mediator to resolve any disputes that may arise later. *Id.* at 1620, 1623. Further complicating the agreement, one provision of the agreement provided for some of the parties to resolve any later disputes by "binding mediation," but the word "mediation" had a line drawn through it and the word "arbitration" was typed directly above it, and yet another provision required the parties either to mutually agree to the monetary payment amount or it would be determined by "binding mediation." *Id.* at 1620. Over the payor's objection, the parties participated in a "binding mediation" to determine the monetary payment amount and the trial court then enforced the mediator's award. *Id.* at 1622.

On appeal, the objecting party argued that the stipulated settlement agreement was unenforceable because, among other things, the parties had no meeting of the minds on a specific procedure to be used to resolve the payment terms. *Id.* The appellate court agreed, concluding that in light of the provision striking out mediation and replacing it with arbitration, the parties believed binding mediation and binding arbitration were different things and that because some versions required "binding arbitration" of any disputes of settlement terms, this clause conflicted with the version requiring "binding mediation" of the disputed payment terms. *Id.* at 1623.

PAGE 11 – OPINION AND ORDER

Ultimately, the appellate court concluded that because of the many discrepancies, the court could not ascertain what the parties actually meant when they used the term "binding mediation." *Id.* In short, the court found the parties' agreement too uncertain to be enforceable. That is not the case here, so *Lindsay* does not help Enter Play.

A later state appellate decision from California further undermines Enter Play's argument. In *Bowers v. Raymond J. Lucia Companies, Inc.*, 206 Cal. App. 4th 724 (2012), the parties reached a "settlement agreement" in which they agreed to attend a full-day mediation and if the mediation were unsuccessful, the parties further agreed that they would be bound by the mediator's determination of how much money, between $100,000 and $5 million, would be paid. *Id.* at 733. The mediator was authorized to choose between the plaintiff's final demand and the defendant's final offer. *Id.* The court found that the parties mutually and expressly consented to this form of "binding mediation."

After the mediator's decision, the defendant in *Bowers* relied on *Lindsay* to argue that the agreement to be bound by the mediator's decision was inherently uncertain and unenforceable. *Id.* at 735. The court in *Bowers* disagreed, distinguishing *Lindsay* on two grounds. First, the court found that, unlike the appellants in *Lindsay* who demonstrated the absence of a meeting of the minds by objecting to "binding mediation" at the outset, the defendant in *Bowers* never objected to the agreed-upon procedures until after the mediator made an award in the plaintiffs' favor. *Id.* at 736.

Second, the court in *Bowers* found that, unlike the parties in *Lindsay*, the parties in *Bowers* clearly described and agreed to the procedure they intended to implement to resolve their dispute—a full-day mediation at the end of which, if unsuccessful, the mediator would issue a binding award to the plaintiffs in an amount equal to either the last demand or the last offer. *Id.*

at 736. Thus, the court in *Bowers* concluded, the agreement to these procedures was both sufficiently certain and enforceable. *Id.*

The present dispute is most analogous to the facts in *Bowers*. First, Enter Play and NIKE freely chose the option of submitting their remaining and unresolved disputes regarding the terms of the settlement agreement to Judge Acosta for his final and binding determination, and neither party objected to Judge Acosta's authority to issue such a binding determination before he issued his decision. It was only after Judge Acosta resolved the dispute in a manner unfavorable to Enter Play that Enter Play objected that Judge Acosta did not have the authority to do what he did here.

Second, both Enter Play and NIKE were sufficiently clear and certain in the procedures to which they each agreed. Both parties established an agreed-upon briefing schedule with Judge Acosta, and both parties expressly agreed to be bound by his determination. As in *Bowers*, the agreement by Enter Play and NIKE to have Judge Acosta fully and finally determine the disputes relating to the terms of the settlement agreement is both certain and enforceable.

Enter Play's final argument is that Mr. Jamison cannot be required to sign the declaration that is part of the agreed-upon settlement agreement because he would be committing perjury by doing so. First, this issue was never raised before Judge Acosta, even though he directed the parties to include in their submissions to him all unresolved disputes concerning the final form of the settlement agreement. Because Enter Play specifically agreed that it would raise all disputed issues relating to the settlement agreement with Judge Acosta who would then finally resolve those issues, Enter Play has waived its right to raise this specific issue.

Second, Enter Play's argument is not persuasive on the merits. Enter Play specifically and expressly agreed that Mr. Jamison would sign the declaration in the form presented by

PAGE 13 – OPINION AND ORDER

NIKE, with the additional sentence that was put on the record by Judge Acosta at the settlement conference. Mr. Jamison also had previously signed a declaration in this case that contains similar statements to some of those he now alleges would constitute perjury. Dkt. 58-13 at 1-13. Nearly two months after Judge Acosta issued his letter opinion resolving the parties' disputes, Mr. Jamison served on NIKE a "Declaration of Brad Jamison Retracting False Statements per ORS 162.055 *et seq.*" Dkt. 58-14.[4] In his "retraction," Mr. Jamison purports to retract certain statements, clarifying that: (1) he cannot attest that the NIKE and Enter Play patent applications disclose different inventions because he is not qualified to make such a determination with certainty and it is for the United States Patent and Trademark Office ("USPTO") to decide; (2) he cannot attest that there is no overlap in the inventions disclosed in the NIKE and Enter Play patent applications because he cannot know this with certainty and cannot know how the USPTO defines "overlap"; and (3) he cannot attest that to the extent there is any overlap, he obtained the subject matter from NIKE because to his knowledge there is no subject matter disclosed in the Enter Play patent application that he received from NIKE.

Disregarding the self-serving nature of Mr. Jamison's "retraction," his concerns with his previous statements (and the similar statements contained in the declaration required as part of the settlement agreement) are without merit. Regarding his first and second retraction, he is not making a declaration on behalf of the USPTO. He is making a declaration based on his personal knowledge and lay-person's belief and understanding. To the extent that he is concerned that this is not clear, a sentence may be added that clarifies that he makes this declaration based on his understanding and opinion as a lay person and does not purport to state what the USPTO may

---

[4] Oregon Revised Statute §§ 162.055 through 162.105 describe the crime of perjury and what may and may not constitute defenses to the crime of perjury. Or. Rev. Stat. § 162.105 provides that, under certain circumstances, "retraction" may be a defense to the crime of perjury.

PAGE 14 – OPINION AND ORDER

ultimately conclude with respect to any of the relevant pending patent applications. With respect to his third retraction, he expressly agreed to the addition of the sentence that if there is any overlap in the relevant patent applications he obtained the "subject matter" from NIKE. This was an important part of the settlement agreement and was clarified on the record at the settlement conference several times. Accordingly, Enter Play is bound by its agreement that Mr. Jamison will sign the declaration, regardless of Mr. Jamison's current subjective concerns or understanding of that agreement. *See City of Canby v. Rinkes*, 136 Or. App. 602, 611 (1995) ("Oregon subscribes to the objective theory of contracts. That means that whether the parties entered into an agreement does not depend on whether the parties had the same subjective understanding of their agreement, that is, on whether their "minds met" on the same understanding. Rather, it depends on whether the parties agreed to the same, express terms of the agreement, and on whether those terms constitute an enforceable agreement. Here, the parties agreed to the terms of their settlement in open court. Hence, the settlement agreement is valid even if the Rinkeses' subjective understanding of it was different from the city's and the court's understanding."); *Newton/Boldt v. Newton*, 192 Or. App. 386, 392, 86 P.3d 49 (2004) (internal citation omitted) ("[W]hether parties enter into a contract does not depend on their uncommunicated subjective understanding; rather, it depends on whether the parties manifest assent to the same express terms."). The Court does not find credible or persuasive Mr. Jamison's newly-discovered concern that such a statement by him may constitute perjury.

## CONCLUSION

NIKE's motion to enforce the settlement and for sanctions (Dkt. 64) is GRANTED IN PART AND DENIED IN PART. Because the parties entered into an enforceable contract authorizing Judge Acosta to make a final and binding determination concerning the terms and scope of the parties' settlement, the settlement agreement as determined by Judge Acosta, acting

PAGE 15 – OPINION AND ORDER

in his official capacity as a settlement judge, is hereby enforced. Enter Play is ORDERED to sign the relevant settlement documents, as determined by Judge Acosta, including Mr. Jamison's declaration, on or before June 14, 2016. If Enter Play and Mr. Jamison fail to do so by that date, the Court DECLARES AND DEEMS TO BE SIGNED as a matter of law both documents as of June 15, 2016. NIKE'S request for sanctions is DENIED.

**IT IS SO ORDERED**.

DATED this 31st day of May, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge